PEOPLE ex rel. BRYMER v. GRAY.

(Supreme Court, Trial Term, Kings County.   June, 1898.)

1. MUNICIPAL CORPORATIONS—FIRE MARSHAL.
   Under New York City Charter, § 722, making the members of the fire departments of New York, Brooklyn, and Long Island City members of the fire department of the city of New York, to be assigned to duty by the fire commissioner, with the rank and grade formerly held by them, a fire marshal of the city of Brooklyn, appointed under Laws 1892, c. 445, providing that the fire marshal shall be entitled to all privileges of members of the uniformed force of the fire department, and shall rank as a member thereof, has no right to the office of fire marshal of the city of New York, for the boroughs of Brooklyn and Queens.

2. SAME—DISCHARGED VETERANS.
   New York City Charter, § 127, providing that all veterans of the army or navy entitled to serve by law during good behavior should be retained in like positions under the same circumstances, does not vest persons holding office thereunder with a right to any particular office, but only gives them the right of appointment to such office.

3. OFFICERS—TRIAL OF TITLE.
   In an action to try title to office, it is sufficient for defendant to show a prima facie title, and the burden is on plaintiff to impeach it.

Action by the people of the state of New York, on the relation of Alonzo Brymer, against John Morrissey Gray, to oust him from the office of fire marshal of the city of New York, for the boroughs of Brooklyn and Queens, and to have the title of relator thereto established.   Judgment for defendant.

Hugo Hirsh, for plaintiff.
William J. Carr, for defendant.

GAYNOR, J.   The relator was appointed fire marshal of the city of Brooklyn in 1894.   By an amendment to the charter of that city in 1889 (chapter 373, Laws 1889) that position was created and made a public office in the department of fire, to be filled by appointment of the head of that department, viz., the fire commissioner.   By a further amendment in 1892 (chapter 445, Laws 1892) it was provided that the fire marshal "shall rank as a member of the uniformed fire force of the department of fire, and shall be entitled to all the privileges and immunities thereof except to be placed on the pension roll of the firemen's insurance fund."   Such was the official status of the relator when the charter of the new city took effect, and the new city became an entity.

By the charter of the new city there is by name a fire department, the head of which is the fire commissioner.   Section 720.   Such commissioner is authorized to organize his said department "into such bureaus as may be convenient and necessary," one of which "shall be charged with the investigation of the origin and cause of fires, the principal officers of which shall be called fire marshals," and "a branch of said bureau shall be located in the borough of Brooklyn."   Section 727.   And again the said commissioner is authorized "to appoint and remove a fire marshal for the boroughs of Manhattan, the Bronx and Richmond, and a fire marshal to be seated

in Brooklyn and to exercise his powers within the boroughs of Brooklyn and Queens." Section 779.

The relator claims that he was not merely "ranked" as a member of the "uniformed fire force" of the city of Brooklyn, by the said act of 1892, in order to enable him to enjoy certain privileges and immunities of the actual members of that force, but that he was made a member thereof in fact, and was therefore transferred with such force to the fire department of the new city, and vested with title to the said office of fire marshal for the boroughs of Brooklyn and Queens, by the following provision of the new charter, viz.:

"The officers and members of the uniformed force and legally appointed firemen in the corporation formerly known as the mayor, aldermen and commonalty of the city of New York, and in the city of Brooklyn and in the city of Long Island City are hereby made members of the fire department of the city of New York, as hereby constituted, and shall be assigned to duty therein by the fire commissioner, with the rank and grade now held by them respectively, as nearly as may be practicable." Section 722.

That the office which the relator held in the city of Brooklyn ceased with the year 1897, seems beyond doubt. That this transferring provision of the new charter did not ipso jure invest him with title to the office of fire marshal of the new city for the boroughs of Brooklyn and Queens, any more than with title to the similar office for the boroughs of Manhattan, the Bronx, and Richmond, seems equally clear. It only gave the right of appointment to office, not title to any particular office. If the relator was by the said provision transferred with the said uniformed fire force to the civil service of the new city, it was not to a particular position or incumbency, but to "be assigned" to one by the commissioner, for the said provision so says. He was no more transferred by force of the statute itself to a particular seat or incumbency, than was any other officer or member of the said force. All were brought into the civil service of the new city, to be assigned each to duty and place.

The relator being a veteran soldier also claims that he was transferred to the civil service of the new city, and vested with title to the particular office in question, by force of section 127 of the new charter, viz.:

, "All veterans either of the army or navy or the volunteer fire departments, now in the service of either of the municipal and public corporations hereby consolidated, who are now entitled by law to serve during good behavior, or who cannot under existing law be removed except for cause, shall be retained in like positions and under the same conditions by the corporation constituted by this act, to serve under such titles and in such way as the head of the appropriate department or the mayor may direct."

But it will also be observed that this provision vests the persons to whom it relates with no title to any particular place or office in the new city, but only makes it the duty of "the head of the appropriate department or the mayor" to retain them in service and assign them to positions.

The relator having no title to the office in question, and therefore no right to demand it of the defendant, judgment of ouster cannot be given in his favor against the defendant, even if the latter had no right to the office. This being the only aspect in which the case

has been presented at the bar, I might stop here. But as I understand it, our action by the people which has superseded the former writ quo warranto, may bear two aspects against the defendant. It may simply be by the people to oust the incumbent, as could only be the case anciently with the writ quo warranto, if my memory is true to me; or it may be by the people on the relation of an individual claiming title to the office, and partly in his interest, as is the present action. In the former aspect, the burden of proof is upon the defendant to show his title; in the latter, it is upon the plaintiff to show the relator's. The plaintiff having here failed to show the relator's title, the question may still remain whether the defendant has shown his, for otherwise the people would be entitled to judgment of ouster against him, though not in the interest of the relator. It is admitted that the defendant was appointed to the office by the fire commissioner, and duly qualified. This makes out a prima facie title in him, and no evidence to impeach it has been given. It was the legal duty of the said commissioner to appoint some competent person to the office. The defendant being competent, his appointment is not void. If the relator had a prior right of appointment, that did not confer title to the office upon him. It only enabled him to come forward and assert his right of appointment, and enforce it. Title to the office could come only from appointment and acceptance. There is no proof of title to the office in any one but the defendant.

Finally, the immunity from removal except for cause and after a hearing which the relator would have under the new charter (section 739), if a member of the uniformed fire force, and which he would have as a veteran soldier, whatever his position (chapter 821, Laws 1896), is not relevant here. The relator's right to the office in question depends upon whether he has title thereto, not upon whether he would be irremovable except for cause and after a hearing if he were in the office.

Judgment for the defendant.